UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORRIS JOHNSON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | Civil Action No. 12-303 (CKK) |

MEMORANDUM OPINION
(March 16, 2012)

Plaintiff Morris Johnson filed suit as the parent and next friend of his minor son, M.J., against Defendant the District of Columbia ("the District"). M.J. receives special education services from the District pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"),[1] 20 U.S.C. § 1400 *et seq*. This suit seeks to force the District to allow M.J. to attend his former school (Deal Middle School) while the challenge to M.J.'s placement at McFarland Middle School is under review by a hearing officer. Concurrently with the Complaint, Plaintiffs filed a [2] Motion for a Temporary Restraining Order. During a telephonic conference call with the Court, the parties agreed to convert Plaintiffs' TRO request into briefing on the merits of Plaintiffs' underlying Complaint, to be completed on an expedited basis. 2/27/12 Minute Order. Plaintiffs subsequently filed a [6] Motion for Summary Judgment,

---

[1] The IDEA was re-authorized and re-codified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108–446, 118 Stat. 2647 (2004). The short title of the re-authorized and amended provisions remains the Individuals with Disabilities Education Act. *See* Pub. L. No 108–446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400 (2006). Accordingly, the Court refers to the amended Act herein as the IDEA.

supplementing their prior motion. The summary judgment motion is now fully briefed[2] and ripe for adjudication. After considering the parties' briefs, the accompanying exhibits, and the applicable authorities, Plaintiffs' Motion for Summary Judgment is DENIED.

## I. BACKGROUND

*A. Statutory Framework*

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Once a child is identified as disabled, the school district must convene a meeting of a multi-disciplinary team to develop an individualized education program ("IEP") for the student. *See* § 1414.[3] The IEP must include a variety of information, including the child's current levels of academic achievement and functional performance, measurable annual goals, how the child's progress towards the goals will be measured, and the special education and related services to be provided to the child. § 1414(d)(1)(A)(I).

If the parent of a child receiving services pursuant to the IDEA believes his or her child's IEP or school placement is inadequate, the parent may file a "due process complaint." *E.g.*, § 1415(b)(7)(A); § 1415(k)(3). The IDEA further provides that

---

[2] See Pls.' Mot. for a Temp. Restraining Order, ECF No. [2]; Pls.' Mot. for Summ. J., ECF No. [6]; Def.'s Opp'n, ECF No. [7]; Pls.' Reply, ECF No. [8].

[3] Unless otherwise indicated, all section references are to Title 20 of the United States Code.

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

§ 1415(j). Known as the "stay-put provision," this section mandates that once a parent files a due process complaint, "the child shall remain in the interim alternative educational setting pending the decision of the hearing officer . . . unless the parent and the State or local educational agency agree otherwise." § 1415(k)(4); *accord* 34 C.F.R. § 300.518(a).

    *B.*    *Factual Background*

M.J. is a twelve year old student currently in the sixth grade. Pls.' Ex. 1 (Compreh. Psych. Eval.), at 1. In the third grade, M.J. was diagnosed with a learning disorder and began to receive special education services. *Id.* at 3. Prior to entering middle school, M.J.'s IEP identified his primary disability as "specific learning disability" and dictated that M.J. should receive five hours per week of specialized instruction outside the general education setting in each of the following academic areas: reading, written expression, and mathematics. Pls.' Ex. 3 (1/23/12 Hearing Officer Determination ("HOD")), at 3. The IEP further provided that M.J. should receive 30 minutes of specialized instruction outside the general education setting each in the following areas: behavioral support services and occupational therapy. *Id.* Finally, the IEP required M.J. to receive the support of a dedicated aide and access to "Other Classroom Aids," such as access to a computer, open book examinations, modified projects to fit M.J.'s attention threshold. *Id.*

Before entering middle school, M.J. underwent another comprehensive psychological evaluation, which diagnosed M.J. with Attention-Deficit/Hyperactivity Disorder, Combined

Type, and classified as having a learning disorder, not otherwise specified. Pls.' Ex. 1, at 12. For the 2011-2012 school year, M.J. enrolled in Deal Middle School ("Deal"), his neighborhood middle school. Pls.' Ex. 3, at 4.  In the fall of 2011, the District convened several meetings to revise M.J.'s IEP. *Id.* at 4-5.  Among other changes, the District decided to reduce M.J.'s hours of specialized instruction by half. *Id.* at 5.  M.J.'s parent filed a due process complaint, arguing that M.J.'s October 31, 2011 IEP denied M.J. a free appropriate public education. Pls.' Ex. 2 (11/9/11 Due Process Compl.).

In ruling on the initial due process complaint, the Hearing Officer found that rather than transfer M.J. to a school that could provide the services outlined in his IEP, the District had simply revised M.J.'s IEP to match the lower level of services available at Deal. Pls.' Ex. 3, at 5. The Hearing Officer denied the parent's request that M.J. receive "full-time out of general education specialized instruction," and instead found that the full fifteen hours of specialized instruction previously required by M.J.'s IEP was sufficient to provide M.J. with a free appropriate public education. *Id.* at 8.  Finally, the Hearing Officer denied the parent's request that M.J. be placed in a separate day school, but explicitly found that Deal could only provide the specialized instruction in a "resource setting with [intellectually disabled] students or a co-taught setting in general education classrooms only, neither of which is appropriate for [M.J.]," therefore, "the location of services offered by [the District] pursuant to this decision *must be something other than [M.J.'s] current DCPS middle school.*" *Id.* at 8-9 (emphasis added).

In light of the Hearing Officer Determination ("HOD"), the parties convened to establish a new IEP for M.J. Pls.' Ex. 4 (2/1/12 IEP).  In accordance with the HOD, the District designated a new school for M.J. to attend, MacFarland Middle School ("MacFarland"). Pls.'

Ex. 5 (2/6/12 Due Process Compl.), at 5.  Plaintiffs allege they asked for an opportunity to visit the school before consenting to M.J. attending MacFarland.  *Id.*  After visiting the school, the Plaintiffs objected, but the District moved forward with transferring M.J. to MacFarland, including by un-enrolling M.J. from Deal.  *Id.*  On February 6, 2012, Plaintiffs filed a second due process complaint, alleging MacFarland could not provide the specialized instruction required by M.J.'s new IEP.  *Id.* at 7.  Three days later, Plaintiffs filed a motion with the Hearing Officer invoking the stay-put provision and requesting that M.J. be placed at a private school while the second due process complaint is adjudicated.  Pls.' Ex. 6 (2/9/12 Mot. to Invoke "Stay Put"), at 4.  The Hearing Officer denied Plaintiffs' motion, finding that "on 2/1/12, the revised IEP became [M.J.'s] current educational program and MacFarland [Middle School] became [M.J.'s] current placement."  Pls.' Ex. 10 (2/16/12 Hearing Officer Order), at 3.  Plaintiffs subsequently filed the present action, seeking an injunction requiring M.J. to attend Deal or a private school of his parent's choice pending resolution of the second due process complaint.  Compl., ECF No. [1], at 7.

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The stay put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy."  *Casey K. ex*

*rel. Norman K. v. St. Anne Cmty High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir.2005) (citations omitted).  Once a due process complaint has been filed, a parent can invoke the stay-put provision when the school district proposes a change in the child's "then-current educational placement." § 1415(j).  The IDEA does not define the term "then-current educational placement," but the courts have explained that a child's educational placement "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Bd. of Educ. of Cmty High Sch. Dist. No. 218, Cook Cnty., Ill. v. Ill. State Bd. of Educ.*, 103 F.3d 545, 548 (7th Cir. 1996).  The parent seeking the stay-put injunction "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement." *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984).  In the event the school district cannot provide the child with his or her then-current educational placement, the school district has an "obligation to provide a 'similar' placement, on an interim basis." *Knight ex rel. Knight v. District of Columbia*, 877 F.2d 1025, 1029 (D.C. Cir. 1989).

### III.  DISCUSSION

In order to determine whether Plaintiff is entitled to a stay-put injunction instructing the District to return M.J. to Deal, the Court must answer two questions: (1) what was M.J.'s "then-current educational placement" at the time the second due process complaint was filed?; and (2) has the District proposed a "fundamental change" in M.J.'s educational program?  The Court finds that M.J.'s current educational placement at the time his parent filed the second due process complaint was the February 2012 IEP, with services to be provided at MacFarland Middle School.  Accordingly, the District has not proposed a "fundamental change" in M.J.'s

educational placement, and Plaintiff's request for a stay-put injunction must be denied.

Not surprisingly, the parties fundamentally disagree as to what was M.J.'s educational placement at the time his parent filed the second due process complaint (February 6, 2012). Plaintiffs contend that Deal should be considered M.J.'s "then-current educational placement" because despite the HOD, the District "has yet to propose a placement that both parties agree can implement [M.J.'s] IEP." Pls.' Mot. at 10. The fundamental flaw in Plaintiffs' argument is the underlying assumption that M.J.'s "educational placement" is the physical school he attends. *Ill. State Bd. of Educ.*, 103 F.3d at 548. Typically, "[t]he dispositive factor in deciding a child's 'current educational placement' should be the [IEP] . . . actually functioning when the 'stay put' is invoked." *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996) (citations omitted); *accord Mackey v. Bd. of Educ. for the Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163-64 (2d Cir. 2004); *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990). Thus the underlying question in this case is what IEP governed services for M.J. when his parent initiated the pending administrative proceedings.

Although Plaintiffs do not directly address the issue in their pleadings, there is no indication in the record that Plaintiffs objected to the February 2012 IEP itself. Plaintiffs did not challenge the substance of the February 2012 IEP in the second due process complaint. *See* Pls.' Ex. 5. Moreover, the HOD finding functions as an "agreement" for purposes of the stay-put provision between the parties as to the level of services M.J. should receive. *See* 34 C.F.R. § 300.518(d); *accord Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 373 (1985); *Mackey*, 386 F.3d at 163 (noting once the hearing officer issued a decision, "there was an agreement changing [the student's] pendency placement"). Thus, as of February 6, 2012,

the operative IEP was the February 1, 2012 IEP, which incorporated the findings of the HOD. As the last agreed upon IEP, the February 2012 IEP is M.J.'s "then-current educational placement" for purposes of the stay-put provision.

Although the case law on this issue is sparse, at least two other courts in this District have adopted the same standard employed by this Court.  In *Laster v. District of Columbia*, 394 F. Supp. 2d 60 (D.D.C. 2005), Judge Ricardo M. Urbina found that "[b]ecause [the student's] guardian did not consent to the 2005-2006 IEP, [the student's] current educational placement is the 2004-2005 IEP." *Id.* at 65.  Judge Urbina rejected the District's contention that placing the student at his prior school was impossible due to age restrictions, and granted the guardian's request for a stay-put injunction, ordering the District to place the student in a location providing services equivalent to the student's last agreed upon IEP.  *Id.* at 65-66.  Likewise in *Spilsbury v. District of Columbia*, 307 F. Supp. 2d 22 (D.D.C. 2004), Judge Emmet G. Sullivan held that the IEP in place for the students prior to the challenged IEP controlled what services the students were required to receive (and thus what services the District had to fund) during the pendency of the students' challenge to the revised IEP.  *Id.* at 25-26.

Plaintiffs' motion relies entirely on *Spilsbury* for the proposition that Deal should be considered M.J.'s "then-current educational placement."  There are important factual differences that Plaintiffs overlook.  In *Spilsbury*, the plaintiffs challenged the revised IEP the District sought to implement, thus the prior IEP controlled what services the students would receive, and where they would attend school.  307 F. Supp. 2d at 65-66.  The question in *Spilsbury* was what IEP the District had to follow while the plaintiffs' due process complaint was pending.  *Id.* at 25 ("DCPS refused to fund these services, arguing that the 2001–02 IEPs-the challenged

IEPs-dictate the students' placements and required educational services."). Here, the parties agreed to M.J.'s February 2012 IEP. The dispute is to whether or not MacFarland can provide those services. Judge Sullivan faced an entirely different question in *Spilsbury*. Plaintiffs provided no statutory or legal support for their contention that when the parties disagree as to a physical location for services, an IEP previously rejected by a Hearing Officer should govern the child's services until the administrative proceedings are complete.

Plaintiffs repeatedly contend that "the current educational placement cannot be the placement that is being challenged by the Plaintiffs." Pls.' Reply at 5. The Court agrees, but the conclusion Plaintiffs reach from this contention is based on the flawed premise that M.J.'s physical placement and "educational placement" are synonymous. Plaintiffs are correct insofar as the District could not seek to employ an IEP that the Plaintiffs were challenging in administrative proceedings. *E.g., Laster*, 394 F. Supp. 2d at 65. However, Plaintiffs are not challenging the IEP itself, just the adequacy of the location where M.J. is to receive services under the IEP. Since there is no challenge to the IEP itself, until the Hearing Officer indicates otherwise, the District is free to place M.J. at any facility that it determines can provide the services required by the February 2012 IEP.

Having established that the February 2012 IEP is M.J.'s "then-current educational placement," the next question is what physical location should provide those services. The Plaintiffs do not dispute that pursuant to the February 2012 IEP, the District designated MacFarland as the location where M.J. would receive the services outlined in the IEP. Although Plaintiffs vehemently argue that MacFarland cannot provide the services required by the IEP, the adequacy of the placement is a question for the Hearing Officer to address in resolving the

second due process complaint, a fact Plaintiffs readily admit in their Reply. Pls.' Reply at 4 ("[T]he question of whether a particular placement is appropriate is a different question than what the then current educational placement is."). Contrary to Plaintiff's assertion, Deal cannot be the designated location because the HOD explicitly found that Deal cannot provide the services incorporated into the February 2012 IEP. Accordingly, unless and until the Hearing Officer agrees with Plaintiffs' pending complaint, MacFarland is a proper physical location for M.J. to receive the services required by his IEP.[4]

The final question before the Court is whether, given M.J.'s educational placement, the District has proposed a "fundamental change" to M.J.'s placement. § 1415. Based on the record before the Court, the answer is no. The District proposes keeping M.J. at the same physical location with the same IEP that was in place when M.J.'s parent filed the pending due process complaint. Def.'s Opp'n at 6-7. Since the District has not proposed any change to M.J.'s educational placement, much less a "fundamental change," Plaintiffs have no basis on which to invoke the stay-put provision. *Lunceford*, 745 F.2d at 1582 .

The Court is not unsympathetic to Plaintiffs' concern that repeatedly moving M.J. throughout the school year is problematic for M.J.'s educational development. But the Court would be remiss not to note that it runs contrary to the purposes of the IDEA and to M.J.'s interests in achieving educational progress for M.J. to not attend school, or to require M.J. to attend a school his parent fought to and succeeded in having ruled inadequate to provide

---

[4] Consistent with § 1415(j), the District is free to change M.J.'s physical placement so long as the new placement does not amount to a fundamental departure from M.J.'s February 2012 IEP. *Knight ex rel. Knight*, 877 F.2d at 1029. The Court simply refers to MacFarland as the proper physical placement because the District has not expressed any intent to revise M.J.'s physical placement.

necessary services. The stay-put provision certainly was not designed to keep a child in a school that the parties *agree* cannot provide the necessary services pending a Hearing Officer Determination as to a proper physical placement. Even if the Hearing Officer ultimately determines MacFarland cannot comply with M.J.'s IEP, at this point in time, MacFarland is M.J.'s current educational placement and the stay-put provision does not apply.

Since the stay-put provision is inapplicable to M.J., as a matter of law the District is entitled to summary judgment on Plaintiffs' claim. However, because the District did not cross-move for summary judgment, the Court can do no more than deny Plaintiffs' motion at this time. Therefore, the Court will require Plaintiffs to show cause, on or before March 23, 2012, as to why the Court should not grant summary judgment in Defendant's favor based on the Court's decision today. *See* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant."). This is not an invitation to re-litigate the arguments set forth in Plaintiffs' Reply and rejected by the Court, but Plaintiffs are entitled to an opportunity to respond since Defendants did not move for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds Plaintiffs are not entitled to a stay-put injunction pursuant to the IDEA. For purposes of the stay-put provision, M.J.'s "then-current educational placement" is the IEP agreed to by the parties on February 1, 2012. Pursuant to the IEP, the District elected to place M.J. at MacFarland Middle School. This Court is not in a position to review the adequacy of that placement. Because the District has not proposed revising the IEP, the stay-put provision is inapplicable to this case. Therefore, Plaintiffs' [6]

Motion for Summary Judgment is DENIED.

An appropriate Order accompanies this Memorandum Opinion.

Date:   March 16, 2012

                                                                  /s/
                                        **COLLEEN KOLLAR-KOTELLY**
                                        UNITED STATES DISTRICT JUDGE